OPINION OF THE COURT
Meyer, J.
The Federal Arbitration Act (9 USC §§ 1-14) requires an account executive whose contract of employment by a stock brokerage company provides for arbitration under the then prevailing constitution and rules of the New York Stock Exchange to arbitrate a claim for defamation, notwithstanding that the alleged defamatory statements were made after termination of the account executive’s employment. The order of the Appellate Division should, therefore, be reversed, with costs, and defendant’s motion to compel arbitration granted.
I
Plaintiffs are registered representatives with the New York Stock Exchange. Their employment by defendant PrudentialBache began in February 1983 and was terminated on August 6, 1984 when they resigned their positions with defendant and together joined Rooney Pace Inc., another brokerage house. Prior to their employment by defendant they had been with Shearson American Express from May 1981 until January 1983, with Merrill Lynch from June 1980 until May 1981 and with Paine Webber for varying periods ending in June 1980. *504 On the day of their resignations from Prudential-Bache, its resident manager addressed a letter to clients that had been serviced by plaintiffs reading in pertinent part, "Messrs. Bill Flanagan, Mitch Drucker and Steve Flanagan are on the road again. We regret if their frequent moves have caused you inconvenience,” and stated Prudential-Bache’s desire to continue to service the customer’s account. On August 8, 1984, defendant’s resident manager responded to the request of Rooney Pace’s manager for information about plaintiffs’ conduct while employed by defendant by stating, so plaintiffs’ complaint alleges, that there were three lawsuits pending against them with respect to their professional conduct while employed at Shearson and two additional lawsuits pending with respect to their conduct while employed by defendant. The complaint alleges further that the latter statements were false and that the letter was intended "to portray and characterize plaintiffs as being drifters who were unreliable in the conduct of their business activities.”
Plaintiffs having begun an action for defamation against Prudential-Bache, it moved by order to show cause for an order compelling arbitration and staying the action. Annexed to the moving affidavits were the employment agreements and uniform applications for securities industry registration executed by plaintiffs, as well as copies of provisions of the constitution and rules of the New York Stock Exchange referred to below. The employment agreements each provided that "[a]ny claim or controversy arising out of or respecting any matter contained in this Agreement * * * shall be settled by arbitration in New York City under the then prevailing Constitution and Rules of the New York Stock Exchange, Inc.” and in the uniform application each of the plaintiffs agreed as a condition of consideration of his application (NYSE rule 345.16) to abide by the constitution and rules of the Exchange as from time to time amended. The applications also included plaintiffs’ specific agreements "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [New York Stock Exchange].” The constitution of the Exchange provides in article VIII, § 1 that "[a]ny controversy between parties who are members, allied members, member firms or member corporations and any controversy between a non-member and a member or allied member or member firm or member corporation arising out of the business of such *505 member * * * shall at the instance of any such party, be submitted for arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors.” Rule 347 of the Exchange rules requires that "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.”
Notwithstanding plaintiffs’ numerous agreements to arbitrate, Special Term, noting the division among the Federal Courts of Appeals on the question and deeming it inappropriate to bypass the dispositive Second Circuit opinion in Coudert v Paine, Webber, Jackson & Curtis (705 F2d 78), denied the motion because "[plaintiffs’ connection with defendant had terminated when the alleged libels were published.” On appeal to the Appellate Division, that court affirmed, without opinion (111 AD2d 601).
The appeal is before us by our leave (66 NY2d 604). Plaintiffs argue that it should be dismissed for nonfinality* and on the merits that this court is bound to follow the Second Circuit opinion and that, in any event, the claimed defamatory statements did not come within the scope of plaintiffs’ agreements to arbitrate. We disagree and, therefore, reverse and grant defendant’s motion.
II
Although enforcement of the Federal Arbitration Act "is left in large part to the state courts,” it "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate” (Cone Hosp. v Mercury Constr. Corp., 460 US 1, 25, n 32; Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, 473 US —, —, 105 S Ct 3346, 3353) which is not dependent upon the forum in which the right to *506 arbitration is asserted (Southland Corp. v Keating, 465 US 1, 12, 13; GAF Corp. v Werner, 66 NY2d 97, 102). In such a case we are bound to apply the statute as interpreted by Supreme Court decision or, absent such, in accordance with the rule established by lower Federal courts if they are in agreement (Alvez v American Export Lines, 46 NY2d 634, 639, affd 446 US 274).
When there is neither decision of the Supreme Court nor uniformity in the decisions of the lower Federal courts, however, a State court required to interpret the Federal statute has the same responsibility as the lower Federal courts and is not precluded from exercising its own judgment or bound to follow the decision of the Federal Circuit Court of Appeals within the territorial boundaries of which it sits (Alvez v American Export Lines, supra; People ex rel. Ray v Martin, 294 NY 61, 73, affd 326 US 496; New York R. T. Corp. v City of New York, 275 NY 258, 265, affd 303 US 573, reh denied 304 US 588; Iowa Natl. Bank v Stewart, 214 Iowa 1229, 232 NW 445; State v Coleman, 46 NJ 16, 214 A2d 393; Merrill Lynch, Pierce, Fenner & Smith v McCullum, 666 SW2d 604 [Tex], writ refd n.r.e., cert denied — US —, 105 S Ct 811, reh denied — US —, 105 S Ct 1384; United States ex rel. Lawrence v Woods, 432 F2d 1072, cert denied 402 US 983; see, Note, 48 Colum L Rev 943; Ann., 147 ALR 857). Thus in the Alvez, Martin and New York R. T. cases while giving due respect to decisions of the Second Circuit we disagreed with its interpretation, in Alvez as to the rights accorded by maritime law; in Martin as to a Federal statute; and in New York R. T. as to a question of Federal constitutional law.
Ill
The Supreme Court has been emphatic concerning the "liberal federal policy favoring arbitration agreements” (Cone Hosp. v Mercury Constr. Corp., 460 US, at p 24, supra) applicable in State as well as Federal courts (Southland Corp. v Keating, 465 US, at pp 12, 15, supra) and requiring that they "rigorously enforce agreements to arbitrate even if the result is 'piecemeal’ litigation” (Dean Witter Reynolds v Byrd, 470 US 213, —, 105 S Ct 1238, 1243). Questions of arbitrability are, therefore, to "be addressed with a healthy regard for the federal policy favoring arbitration” and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration” (Cone Hosp. v Mercury Constr. Corp., 460 US, at *507 pp 24-25). "Thus, as with any other contract, the parties’ intentions control, but those intentions are generously construed as to issues of arbitrability” (Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, 473 US, at p —, 105 S Ct, at p 3354, supra).
It is against the background of those cases, all except the Cone Hosp. case decided since the Second Circuit’s decision in Coudert, that we must evaluate the present case. The Coudert holding was that a defamation claim based upon alleged false statements about a registered representative made after her resignation by an officer of the brokerage firm that had employed her did not "arise out of’ termination of employment within the meaning of rule 347 (supra), and, therefore, was not arbitrable. In so holding the court recognized that as to disputes relating to employment or a claim of wrongful termination of employment the arbitration provisions survive employment termination even by way of resignation (705 F2d, at p 81). Subsequent decisions by other panels of the Second Circuit in Downing v Merrill Lynch, Pierce, Fenner & Smith (725 F2d 192) and Paine, Webber, Jackson & Curtis v Chase Manhattan Bank (728 F2d 577) have explained that the critical element in Coudert was not the fact that the dispute erupted after employment had terminated but the fact that the subject in dispute was a defamation claim which "did not arise directly out of’ the employer-employee relationship (725 F2d, at p 194). As the Chase Manhattan panel put it: "The narrow construction applied in Coudert to deny a stay pending arbitration was primarily for the reason that the allegedly slanderous language was made after termination of the employment relationship, and thus, while concerning the employment and termination, the dispute did not arise out of the employment or termination” (728 F2d, at p 581, n 6; italics in original). That the fact that the dispute arises after termination of the relationship is not determinative of the right to arbitration is, moreover, clear from the Supreme Court’s holding in Nolde Bros. v Bakery Workers (430 US 243). Construing the arbitration provision of a collective bargaining agreement, the court concluded that a severance pay dispute was arbitrable because it was a dispute which arose under the contract although based on events that occurred after its termination (id., at pp 252-253).
Turning, then, from consideration of when the event occurred to whether it is an event within the scope of the arbitration agreement entered into by the parties, we respect *508 fully decline to follow Coudert for several reasons. First, if we look to the language of rule 347 alone, we find the reasoning of the Eighth Circuit in Morgan v Smith Barney, Harris Upham & Co. (729 F2d 1163) and of the Sixth Circuit in Aspero v Shearson Am. Express (768 F2d 106, cert denied — US —, 106 S Ct 582) more persuasive and more in keeping with the Supreme Court’s admonition that any doubts concerning scope be resolved in favor of arbitration. Both cases dealt with defamatory remarks about a former brokerage employee made after termination of employment. Morgan reasoned that "arising out of employment or termination of employment” did not require that the controversy arise from the employment contract and, therefore rule 347 did not limit arbitration to contractual disputes, but requires "arbitration of tort as well as contract claims which involve significant aspects of the employment relationship” (729 F2d, at p 1167). Analyzing the claimed defamatory remarks, it concluded that those which implicated the employer’s former customers, the status of his broker’s license and his handling of customer accounts were arbitrable, but that the statement that he stole things from the desk of other employees at night did not concern his performance as a broker and, therefore, was not. Aspero held the statement that the employee had engaged in unauthorized trading was arbitrable because resolution of the claim depended upon evaluation of her performance as a broker.
A second and even stronger reason for not following Coudert is that the present case involves a great deal more than rule 347. As noted above, each of the plaintiffs completed a uniform application for registration as a representative. The uniform application called for arbitration of any dispute required to be arbitrated under the Exchange constitution, and article VIII, § 1 of that constitution required arbitration of any controversy "arising out of the business of’ an Exchange member. As the last section of the uniform application evidences, plaintiffs’ new employer was required to communicate with all previous employers during the prior three years and to inquire into the past record of each of the three plaintiffs. It was in response to that inquiry that the August 8, 1984 statements to Rooney Pace’s manager were made. Those statements in response to an inquiry required by Exchange rules, as evidenced by the uniform application, to be made, arose out *509 of Prudential-Bache’s business and, therefore, under the Exchange constitution must be arbitrated. The customer letter also may fairly be said to have arisen from that business for the obvious purpose of the letter was to retain the business of the customers plaintiffs had serviced while employed by defendant. That either or both statements may have been defamatory and that defendant’s business is securities, not defamation, is beside the point, for the only question is whether the dispute between plaintiffs and defendant arose out of defendant’s business. That defendant’s resident manager may have acted improperly in making the statements does not detract from the fact that the manager was acting on defendant’s business when he made them (indeed, unless he was, only he and not defendant can be held in damages for them) and that, therefore, they arose out of defendant’s business (Purtignano v Kidder, Peabody & Co., 108 AD2d 847; Matter of Ghiron [Mayr], 19 AD2d 54; cf. Aetna Life Ins. Co. v Lourie, 201 SC 478, 23 SE2d 741).
The employment agreement signed by each of the plaintiffs provides yet another reason why arbitration rather than judicial resolution of their claim is required. That agreement calls for arbitration under the Exchange rules of "[a]ny claim or controversy arising out of or respecting any matter contained in this Agreement.” The matters contained in the agreement include plaintiffs’ employment, performance of their duties as employees and the termination of their employment. "Respecting” has a broader connotation than "arising out of,” for its definition includes "with regard or relation to: REGARDING, CONCERNING” (Webster’s Third New International Dictionary, at 1934). The alleged defamatory letter and statements relate to and are concerned with plaintiffs’ performance and the termination of their employment. For this reason also the controversy between the parties is within the scope of their agreements as to arbitration.
For the foregoing reasons, the order of the Appellate Division should be reversed, with costs, and defendant’s motion to compel arbitration should be granted.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.

 [2] The case law is clear that an order which either grants or denies an application made under CPLR 7503 (a) to compel arbitration is a final order in a special proceeding and appealable (Matter of Board of Educ. [Auburn Teachers Assn.], 38 NY2d 740; Merrill Lynch, Pierce, Fenner & Smith v Griesenbeck, 21 NY2d 688). The Merrill Lynch case held an order directing arbitration made on such a motion to be appealable as a final order and that the "mere fact that this order was made on a motion in a pending action does not impair its finality” (id., at p 690).