OPINION OF THE COURT
Chief Judge Wachtler.
Plaintiff commenced an action to recover damages from his former employer and its former chief executive officer, claiming that they caused injury to his reputation and career when they used him as an unwitting pawn in an illegal stock trading scheme. The defendants claim the dispute should be resolved by arbitration pursuant to the rules of the National Association of Securities Dealers (NASD), to which all the parties subscribe, and which provide for arbitration of any dispute "arising out of or in connection with the business” of the employer. The trial court granted the defendants’ motion to stay the suit and compel arbitration but the Appellate Division reversed, concluding that the parties did not intend to arbitrate this type of controversy. The defendants appeal by leave of this Court and we reverse.
Defendants contend that the Appellate Division erred in holding that the agreement to arbitrate all disputes arising out of the business of the employer applies only to the employer’s lawful activities. Plaintiff, on the other hand, argues that the Appellate Division properly defined the scope of the agreement and, as an alternative ground for affirmance, urges that defendants waived their right to arbitration by participating in the litigation. He also argues, more narrowly, that his claim against defendant Boyd Jefferies is not arbitrable under the rules of the NASD because neither of these two parties is *80 a member of the Association. These two additional points were rejected by the trial court and not reached by the Appellate Division.
Plaintiff was employed by Jefferies & Co. from 1983 to 1986. The firm is a member of the NASD, and after being hired by the firm, plaintiff applied for registration with the Association. On the uniform application (form U-4), he stated that he agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register.” The NASD has a Code of Arbitration Procedure (NASD Code) which provides for arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association * * * between or among members and public customers, or others” (part I, § 1).
The dispute here focuses on an invoice which the firm sent to Ivan F. Boesky Corp. in March of 1985, seeking payment in the amount of $3 million for "investment, advisory and corporate finance services.” The invoice was prepared and signed by the plaintiff, a senior vice-president and manager of the firm’s corporate finance department, at the direction of Boyd Jefferies, who was then the firm’s chief executive officer.
The plaintiff left Jefferies in the fall of 1986, to take a position with another firm, Salomon Brothers. On November 14 of that year, the Securities and Exchange Commission and the United States Attorney’s office announced to the media that Ivan Boesky had pleaded guilty to illegal stock market activities and that an investigation was under way to determine who participated in the schemes. That same day plaintiff received a summons from the Securities and Exchange Commission, which was investigating Boesky’s financial dealings with Jefferies & Co., including the invoice signed by the plaintiff in March of 1985. Several days after receiving that subpoena, plaintiff left the employ of Salomon Brothers.
No criminal action was taken against plaintiff as a result of the Federal investigation. However, defendant Boyd Jefferies was charged with violating the Federal securities laws and pleaded guilty to two felony counts. On March 19, 1987, Jefferies & Co. issued a press release stating that the criminal charges against Boyd Jefferies related to a transaction in which he agreed on behalf of the firm to purchase certain stock from Boesky entities and later resell the stock to those *81 entities. Under the agreement Boesky was obligated to reimburse the defendant firm for any loss. When the stock declined in value, the defendant Boyd Jefferies ordered that Boesky be sent a bill for $3 million, ostensively for investment services, but actually intended and used to cover the loss. This enabled the Boesky entities to make false entries on their books for which defendant Boyd Jefferies was charged with aiding and abetting. The release states that Boyd Jefferies accepts sole responsibility for the transactions.
On November 13, 1987, plaintiff commenced this action, alleging that he had been ordered to prepare the fraudulent invoice without knowledge of the true facts, that he was thereby made to appear a party to the crime, and that this caused him to suffer damage to his finances and professional reputation. Defendants moved to dismiss on the ground, among others, that the complaint failed to state a cause of action and that the suit was barred by the Statute of Limitations. They also claimed that the dispute was subject to arbitration, and asserted arbitration as an affirmative defense in their answer. The motion to dismiss was denied, defendants filed an appeal and then moved to compel arbitration. The trial court granted that motion and plaintiff appealed. On the appeals the Appellate Division agreed with the trial court that the complaint should not be dismissed, but disagreed with the trial court’s holding that the dispute was arbitrable and concluded that it was not within the scope of the arbitration agreement. Defendants have appealed, claiming that the Appellate Division’s interpretation of the arbitration agreement is inconsistent with Federal law.
The arbitration agreement at issue here is governed by the Federal Arbitration Act. The Act applies to any written agreement to arbitrate "a contract evidencing a transaction involving commerce” (9 USC § 2), which has been held to include agreements to arbitrate disputes arising out of employment in the securities market (Flanagan v Prudential-Bache Sec., 67 NY2d 500). Congress adopted the Act to insure that the courts would rigorously enforce private agreements to arbitrate (Dean Witter Reynolds v Byrd, 470 US 213, 219, 221) and it establishes an "emphatic” national policy favoring arbitration which is binding on all courts, State and Federal (Cone Mem. Hosp. v Mercury Constr. Corp., 460 US 1; Southland Corp. v Keating, 465 US 1, 10; Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 624, 631). Pursuant to the Arbitration Act, "questions of arbitrability must be addressed *82 with a healthy regard for the federal policy * * * [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration” (Cone Mem. Hosp. v Mercury Constr. Corp., supra, at 24-25; see also, Flanagan v Prudential-Bache Sec., supra). As is the case with any contract, the intention of the parties is controlling, "but [under the Arbitration Act] those intentions are generously construed as to issues of arbitrability.” (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 626.)
Here, plaintiff contends that the dispute is not arbitrable because it arose out of illegal activity and not out of the lawful business of the firm. Although the arbitration agreement broadly applies to any controversy arising out of the business of the employer, without such limitation, the Appellate Division accepted plaintiff’s interpretation, noting that "the business of Jefferies & Company, and of the individual defendant, was stocks, not fraud.” (164 AD2d, at 764.) A similar argument was rejected by this Court in Flanagan v Prudential-Bache Sec. (supra).
In Flanagan we held that a suit brought against a stock brokerage firm for making allegedly defamatory statements to customers regarding the professional conduct of former employees was arbitrable under the NASD Code. We stated (at 509): "that defendant’s business is securities, not defamation, is beside the point, for the only question is whether the dispute between plaintiffs and defendant arose out of defendant’s business. That defendant’s resident manager may have acted improperly in making the statements does not detract from the fact that the manager was acting on defendant’s business when he made them * * * and that, therefore, they arose out of defendant’s business.” In Flanagan the employer’s conduct did not violate a statute or constitute a crime. However, these additional factors do not affect the arbitrability of plaintiff’s civil complaint in the case now before us.
A court’s obligation under the Federal Arbitration Act to liberally interpret and enforce arbitration agreements is not diminished when the underlying controversy involves a violation of a Federal statute (Shearson/American Express v McMahon, 482 US 220, 226). The parties, of course, are free to exclude such controversies from their agreement to arbitrate (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 628). But if a civil complaint presenting a statutory violation comes within the scope of a broad arbitration agreement, the court *83 must enforce the agreement, unless Congress has clearly manifested an intention to preclude waiver of judicial remedies (Shearson/American Express v McMahon, supra, at 227; Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 627). Consistent with the Federal policy favoring arbitration, the Supreme Court has enforced broad agreements to arbitrate where the underlying claims involved violations of the Sherman Antitrust Act (Mitsubishi Motors v Soler Chrysler-Plymouth, supra), the Racketeer Influenced and Corrupt Organizations Act and the Securities Exchange Act of 1934, "even though such conduct may also give rise to claims of criminal liability.” (Shearson/American Express v McMahon, supra, at 240.)
In this case there is no contention that Congress has foreclosed arbitration of this type of dispute, and the NASD Code, to which the parties subscribed, broadly provides for arbitration of any dispute arising out of the employer’s business which, on its face, is broad enough to include disputes arising from illegal or criminal acts. Nevertheless, plaintiff contends that his complaint in this case falls outside the scope of the arbitration agreement because the particular "criminal conduct engaged in by Boyd Jefferies on behalf of Jefferies & Co., was outside any conceivable definition of Jefferies & Co.’s 'business’.”
Concededly, not every wrong committed at the workplace can be said to arise out of the employer’s business, and therefore be subject to arbitration if the injured party brings a civil suit (see, e.g., Pearce v E. F. Hutton Group, 828 F2d 826, 832; Morgan v Smith Barney, Harris Upham & Co., 729 F2d 1163 [telling co-workers plaintiff stole from desks]; Fleck v E. F. Hutton Group, 891 F2d 1047 [informing brokerage customers plaintiff a disbarred lawyer]). Under prevailing Federal law the wrongful conduct must involve "significant aspects” of the employment or the employer’s business activities (see, e.g., Morgan v Smith Barney, Harris Upham & Co., supra [claim that employer damaged reputation by telling customers plaintiff’s broker’s license suspended]; Aspero v Shearson/American Express, 768 F2d 106 [claim that employer damaged plaintiff’s reputation by stating he was fired for violating trading rules]; Fleck v E. F. Hutton Group, supra; Pearce v E. F. Hutton Group, supra).
Plaintiff’s contention is that this standard is not met here because Boyd Jefferies’ criminal dealings with Boesky are *84 so far removed from the normal course of the firm’s business, and what plaintiff was hired to do, that they are analogous to selling drugs to a client and using the plaintiff to facilitate the transaction or conceal the illegality without his knowledge of its true character. But in this case we are dealing with a complaint involving a violation of the securities laws, by a firm dealing in securities, which allegedly caused injury to an innocent employee of the firm who was required to participate in the transaction during the course of his employment. To hold that such a dispute does not arise out of the firm’s business is unrealistic and inconsistent with the Federal policy requiring liberal, indeed generous, interpretation of arbitration agreements (cf., Pearce v E. F. Hutton Group, supra [claim that employer’s criminal acts damaged employee’s reputation because of implication in public reports that he participated presents arbitrable controversy]). Such a narrow approach to arbitrability could only diminish the value of arbitration agreements in highly regulated industries where civil wrongs caused by improper business practices are often criminal offenses as well.
Plaintiff raises two additional points which were rejected by the trial court but were not reached by the Appellate Division in light of its determination in the plaintiff’s favor on the primary issue.
Plaintiff contends that defendants waived their right to arbitration because they actively participated in the litigation. He refers specifically to their motion to dismiss the complaint and the appeal from the order denying the motion.
There is a threshold question as to whether Federal or State law applies. Plaintiff urges that the waiver issue is governed by State law because the Federal Arbitration Act creates only substantive rights and this is a procedural question (compare, Matter of Vigo S. S. Corp. [Marship Corp.], 26 NY2d 157 [consolidation of arbitration proceedings governed by State law], with Matter of Rederi [Dow Chem. Co.] 25 NY2d 576, 581 [claim that arbitration is barred by Statute of Limitations governed by Federal law]). He then relies on several recent decisions in which this Court found a waiver under other circumstances, but ignores an earlier case directly on point in which the Court held that a motion to dismiss does not amount to a waiver (Matter of Haupt v Rose, 265 NY 108). In any event, it appears that Federal law is controlling. As the Supreme Court noted in Cone Mem. Hosp. v Mercury *85 Constr. Corp., (supra, at 24-25): "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.” (See also, Rush v Oppenheimer & Co., 779 F2d 885; Brener v Becker Paribas, 628 F Supp 442.)
The United States Supreme Court has never considered under what circumstances a party may be be said to have waived the right to have an arbitration agreement enforced pursuant to the Federal Arbitration Act. The Federal courts that have considered the point seem to be in agreement that substantial resort to the judicial process, such as moving for summary judgment after extensive discovery, reflects an intention to relinquish the right to arbitrate (see, e.g., Peterson v Shearson/American Express, 849 F2d 464; National Found, for Cancer Research v Edwards & Sons, 821 F2d 772), but that making a motion to dismiss the complaint before moving to compel arbitration should not be considered a waiver unless the opposing party demonstrates prejudice (see, e.g., Rush v Oppenheimer & Co., supra; Sweater Bee by Banff v Manhattan Indus., 754 F2d 457; cf., Allied Bldg. Inspectors v Office of Labor Relations, 45 NY2d 735).
Here, defendants asserted their right to arbitrate in their answer and in the motion to dismiss the complaint. If that motion had succeeded, the controversy could have been resolved with no need to enforce the right to arbitrate. Defendants’ motion to compel arbitration was made a few weeks after the motion to dismiss was denied. Their appeal from the order denying the motion to dismiss paralleled plaintiff’s appeal from the order compelling arbitration. Plaintiff has not demonstrated that he was prejudiced by defendants’ motion to dismiss, and asserts only the type of generalized complaints that may be assumed whenever any type of judicial relief is sought before the defendant, named in the suit, moves to have the dispute heard by arbitrators. Bearing in mind that a waiver should not be lightly inferred in light of the liberal Federal policy favoring arbitration (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 24-25; Rush v Oppenheimer & Co., supra, at 887), we have concluded, as did the trial court, that defendants timely asserted their right to arbitrate and that their preliminary and minimal resort to court for relief *86 should not be viewed as an abandonment of their right to enforce the arbitration agreement.
Plaintiffs final point is that he should not be required to submit his claim against Boyd Jefferies to arbitration because neither of them is a member of the NASD and thus there is no agreement to arbitrate between them.
The argument requires consideration of two sections of the NASD Code. Section 1 of part I provides in relevant part: "for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association * * * (1) between or among members; (2) between or among members and public customers, or others.” On its face this section does not appear to cover disputes between persons associated with members. However, the Code further provides in section 8 of part II: "Any dispute, claim or controversy eligible for submission under Part 1 of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of * * * (3) a person associated with a member against a person associated with a member.”
The trial court held that plaintiffs suit against Boyd Jefferies was arbitrable under this latter section, but plaintiff contends this was error. He states: "The only disputes that 'shall be arbitrated,’ even under Section 8, are those 'eligible for submission under Part I of the Code,’ and those do not include disputes between associates of members.”
In our view, a distinction must be drawn between a dispute eligible for arbitration under the section and the parties bound to arbitrate the dispute. In other words, section 1 of part I contains two components. First, it defines the substantive type of controversy which is within the scope of arbitration. Second, it defines the class of persons who may seek or be required to arbitrate such a controversy. Section 8 extends this class to include persons associated with a member who have an eligible dispute with other such associates. Plaintiffs suit against Boyd Jefferies is subject to arbitration under this latter section. Although neither of these parties is a member of the NASD, each is a person associated with a member, their former employer Jefferies & Co., and the substantive dispute is the type arbitrable under part I since it arises out of or in connection with the business of the employer.
*87 Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of the Supreme Court reinstated.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.