PROFILATI ITALIA S.r.1, Plaintiff,

v.

PAINEWEBBER INC., Defendant.

No. 95 Civ. 7729 (DAB).

United States District Court, S.D. New York.

Sept. 30, 1996.

De Vos & Co., New York City (Lloyd De Vos, Andrew W. Heymann, of counsel), for Plaintiff.

Latham & Watkins, New York City (Selvyn Seidel, of counsel), for Defendant.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff Profilati Italia S.r.1. ("Profilati") brings the present action seeking damages

from Defendant PaineWebber Incorporated ("PaineWebber") for breach of contract, breach of fiduciary duty, intentional misrepresentation, and securities fraud under the Securities Exchange Act of 1934, 15 U.S.C. § 78a. Defendant now moves to dismiss the action on the ground that an agreement exists that requires the parties to arbitrate this dispute. 9 U.S.C. §§ 1–14, 201–207. For the reasons set forth below, Defendant's motion is granted.

## I. BACKGROUND

In December 1992, Plaintiff entered into an agreement to pay $7,379,940.00 for the option to buy one hundred fifty thousand metric tons of aluminum for delivery at a rate of five thousand tons per month from July 1993 through December 1995, (Compl. ¶¶ 13–14), which amount was paid by February 1993. (Compl. ¶ 15.)

Prior to initiating the transaction, Profilati entered into two agreements: one with PaineWebber ("Counterparty Agreement") dated September 29, 1992, and another with PaineWebber International Futures Limited ("PWIFL") ("PWIFL Agreement"). (De Vos Aff. Exs. B. & C.) Neither agreement outlines the particulars of the aluminum transaction such as price or quantity. The purpose of the Counterparty Agreement was to outline "the conditions under which [the parties] will trade [London Metal Exchange] Futures and LME Options." (De Vos Aff. Ex. B.) Similarly, the PWIFL Agreement provided the "terms and conditions of doing business," (id. Ex. C at 1), specifically, it obligated PWIFL to perform the following services:

execution of transactions in Instruments as agent for [PaineWebber] on exchanges of

which we are a member; transmission of your instructions and orders to [Paine-Webber]; provision to you of information in respect to your positions which we receive from [PaineWebber]; and advice in relation to transactions in Instruments.

(De Vos Aff. Ex. C ¶ 1.)

The Counterparty Agreement does not contain an explicit arbitration clause.[1] (De Vos Aff. Ex. B.) The PWIFL Agreement contains a clause stating that disputes arising under that agreement "will be resolved by arbitration under the rules of the SFA[2] or its successors." (De Vos Aff. Ex. C ¶ 11.)

The "Operation of Our Relationship" section of the PWIFL Agreement states that PWIFL acts as an agent of Defendant Paine-Webber when Plaintiff provides PWIFL with trading instructions to be transmitted to PaineWebber. (Id. ¶ 6.) Nothing in the PWIFL Agreement suggests that it governs the relationship between Plaintiff and Defendant PaineWebber. To the contrary, the agreement states that the agreement between Plaintiff and PaineWebber governs that relationship.[3] (Id. ¶ 1.)

An Agreement Letter from PWIFL to Plaintiff dated December 23, 1992, bore the heading "Confirmation of business between yourselves and PaineWebber Inc." (Id. Ex. G.) This Agreement Letter outlined the particulars of the aluminum transaction including timing of the aluminum deliveries, timing for the exercising of the option, price, quantity, and place of delivery. Dr. Leonardo Rossetto, the operational head, a director of the Plaintiff and on behalf of the Plaintiff, signed the Agreement Letter. (De Vos Aff. Ex. G; Underhill Aff. ¶ 7.)

---

1. The Counterparty has a clause stating that "all contracts entered into between [the parties] are subject to the LME rules as they may be amended from time to time." (De Vos Aff. Ex. B.) Defendant argues that the LME rules require arbitration of all disputes. However, a key clause in the LME rules was deleted after a Second Circuit ruling in *Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., (London)*, 923 F.2d 245 (2d Cir.1991), *cert. denied*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). The Second Circuit relied on the deleted clause in finding that an agreement to arbitrate existed between

the two parties as a result of a clause in the contract stating that it was subject to LME rules.

2. SFA refers to the Securities and Futures Authority Limited. (De Vos Aff. Ex. C.)

3. The agreement states, "In order to use our services you must also enter into an agreement with [Painewebber] and sign certain documentation and risk disclosure statements which will govern your relationship with [Painewebber]." (Id. ¶ 1.)

At a meeting on June 23, 1993, Plaintiff and PWIFL agreed to delay the period during which Plaintiff could exercise its option to take possession of the aluminum from between July 1993 and December 1993, to December 1995. (Compl. ¶¶ 18–19.) In exchange for this extension, Plaintiff agreed to pay an additional $435,000.00 "within December 15, 1993." (De Vos Aff. Ex. H; Compl. ¶ 20.) Dr. Rossetto memorialized this agreement in writing in an Amended Agreement Letter written to PWIFL dated June 28, 1993.[4] (Compl. ¶ 19; De Vos Aff. Ex. H; Underhill Aff. ¶ 7.) The Amended Agreement Letter stated that it was meant to be a substitute for the December 23, 1992 Agreement Letter. This Amended Agreement Letter also required disputes to be settled "by arbitration according to LME rules." (De Vos Aff. Ex. H.)

On approximately August 26, 1993, Plaintiff was informed[5] that they would be required to make margin payments, regardless of the terms of the Amended Agreement Letter, or lose their option. (Compl. ¶ 43.) Plaintiff paid $82,443.00 of the outstanding $435,000.00. Plaintiff alleges they made this payment under duress. (Compl. ¶ 44.)

PaineWebber International (UK) Ltd. ("PWUK"), in a letter dated September 20, 1993, demanded another margin payment of $193,671.00 from Plaintiff. (Compl. ¶ 47.) The following day, PWUK sent a letter to Plaintiff stating that if payment of $193,671.00 was not received, it would close Plaintiff's open position. (De Vos Aff. Ex. D; Compl. ¶ 50.)

In letters dated September 27 and 30, 1993, PWUK made additional margin calls for $246,558.00 and $276,072.00 respectively. (De Vos Aff. Ex. D; Compl. ¶¶ 51, 53.)

Plaintiff, in a letter to PWIFL dated October 1, 1993, requested full information about its account with PaineWebber and attempted to schedule a meeting to "discuss the situa-tion." (Compl. ¶ 55.) Plaintiff did not receive a direct response to this inquiry. (Compl. ¶ 56.)

In a letter dated October 1, 1993, Paine-Webber informed Plaintiff, that unless Plaintiff confirmed payment in full by October 4, 1993, it would commence liquidation of Plaintiff's open account. (De Vos Aff. Ex. E; Compl. ¶ 57.) In letters dated October 1 and 6, 1993, PWUK demanded additional margin payments of $298,934.00 and $302,674.00 respectively. (De Vos Aff. Ex. D; Compl. ¶ 60.)

## II. DISCUSSION

The Federal Arbitration Act was enacted to ensure that courts "rigorously enforce private agreements to arbitrate, and it establishes an 'emphatic' national policy favoring arbitration which is binding on all courts, State and federal." *Singer v. Jefferies & Co.*, 78 N.Y.2d 76, 81, 571 N.Y.S.2d 680, 682, 575 N.E.2d 98 (1991) (citation omitted); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). The Act states that agreements to arbitrate contained in written contracts involving commerce are "valid, irrevocable and enforceable." 9 U.S.C. § 2. The Act also provides that if an issue covered by a valid arbitration agreement is brought in federal court, that action must be stayed pending the outcome of arbitration. 9 U.S.C. § 3.

Defendant seeks to have Plaintiff's claims dismissed, or in the alternative stayed, because an agreement to arbitrate exists between the parties. Plaintiff denies that any agreement with Defendant requires arbitration of this dispute.

## A. Existence of Arbitration Agreement

The Court's first task is to determine whether an agreement exists between Plain-

---

4. PWIFL ceased doing business in March 1993 and their operations were transferred to Paine-Webber International UK Ltd. (De Vos Aff. Ex. I.)

5. It is unclear who informed Plaintiff of the margin payments. The Complaint alleges PWIFL conveyed the information. (Compl. ¶ 43.) How-ever, as previously mentioned, PWIFL ceased doing business in March 1993. (De Vos Aff. Ex. I.) Plaintiff alleges it was not aware that PWIFL was no longer conducting business at that time. The Court did not receive a copy of the communications between the parties regarding this margin call.

tiff and Defendant requiring arbitration of disputes. "Only when an agreement to arbitrate is found to exist does a court proceed to decide whether a given dispute falls within the scope of that agreement." *Spear, Leeds & Kellogg v. Central Life Assur. Co.*, 85 F.3d 21, 26 (2d Cir.1996).

 Plaintiff does not dispute the validity of the Agreement Letter and the Amended Agreement Letter. Plaintiff argues, instead, that the Agreement Letter and Amended Agreement Letter represent contracts between Plaintiff and PWIFL, not between Plaintiff and Defendant PaineWebber. The language on the face of the Agreement Letter, however, clearly shows that the agreement is between Plaintiff and "PaineWebber Inc." The heading of the Agreement Letter states that it is a confirmation of business between Plaintiff and PaineWebber. Dr. Rossetto, on behalf of Plaintiff, signed the Agreement Letter which is evidence of Plaintiff's intention to be bound by the terms of the agreement, including the arbitration clause requiring that "settlement of disputes [be] by arbitration under LME Rules." (De Vos Aff. Ex. G.) Furthermore, PWIFL acted as an agent of the Defendant. Hence, under agency principles, PaineWebber, through PWIFL, was a party to the Agreement.[6] The Agreement Letter clearly shows an agreement between the parties to arbitrate their disputes.

The Amended Agreement Letter, prepared by Plaintiff as a substitute for the Agreement Letter, contains the very same arbitration language as the Agreement Letter. (De Vos Aff. Ex. H.) Though the Amended Agreement Letter does not contain the header identifying the agreement as being between Plaintiff and Defendant, considering all the circumstances, it is clear that its purpose was to extend the period within which Plaintiff could exercise its option and to document the price Plaintiff would pay for the extension. Nothing in the Amended Agreement Letter suggests that it was intended to be between parties different than those who entered into the Agreement Letter. (*See* Compl. ¶ 66.) Accordingly, the Court finds that an agreement to arbitrate exists between Plaintiff and Defendant.[7]

### B. Scope of Arbitration Agreement Letter

 Having found that an arbitration agreement exists between the parties, the Court must determine whether the present dispute falls within the scope of the arbitration clause. "First and most importantly, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Spear*, 85 F.3d at 28 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Second, this Court's construction of the agreement "must ascertain and implement the reasonable expectations of the parties who undertake to be bound by its provisions." *Spear*, 85 F.3d at 28.

 The arbitration clause in question appearing in the Agreement Letter and Amended Agreement Letter states that "settlement of disputes [will be] by arbitration under LME Rules." (De Vos Aff. Exs. G & H.) This is an unequivocal statement that the parties will resolve their disputes in arbitration. A reasonable interpretation of that clause is that it is intended to cover *all* disputes arising out of the terms of the Amended Agreement Letter. The dispute before the Court arose as a result of the terms of the Agreement Letter and Amended Agreement Letter. Plaintiff constantly cites to the alleged breaches of the agreement in its Complaint. (Compl. ¶¶ 20, 26, 43, 49, 52, 54, 59, 61, 63, 66.) Giving due regard for the federal policy in favor of arbitration, *Spear*, 85 F.3d at 28, the Court finds that because the dispute arises from the terms of the Agreement Letters and the clear intention of both parties to arbitrate disputes as evidenced by the Agreement Letter, signed

---

6. Plaintiff, in its Complaint constantly alleges that PWIFL was acting on behalf of the Defendant.

7. Furthermore, Plaintiff alleges that the Defendant is liable for the acts that resulted from the Letter agreements. Plaintiff cannot sue the Defendant under the Letters and then argue that Defendant is not a party to those Letter agreements.

by a Profilati representative, and the Amended Agreement Letter, prepared by Profilati, the claim is arbitrable.

### III. CONCLUSION

For the aforementioned reasons, Defendant's motion is hereby GRANTED. However, the Court will not dismiss the Complaint but will stay this action until such time as the arbitration concludes. The Clerk of the Court is ordered to place this case on the suspense docket until otherwise notified by this Court.

SO ORDERED.