Matter of Long Is. Power Auth. Hurricane Sandy Litig. (2018 NY Slip Op 07127)





Matter of Long Is. Power Auth. Hurricane Sandy Litig.


2018 NY Slip Op 07127


Decided on October 24, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 24, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
REINALDO E. RIVERA
ROBERT J. MILLER
HECTOR D. LASALLE, JJ.


2016-07027
 (Index No. 601434/13)

[*1]In the Matter of Long Island Power Authority Hurricane Sandy Litigation.
John Coyle, et al., respondents, Long Island Power Authority, et al., appellants.


Rivkin Radler LLP, Uniondale, NY (Evan H. Krinick, Cheryl F. Korman, Michael P. Versichelli, Brian L. Bank, and Henry Mascia of counsel), for appellant Long Island Power Authority.
Ingram Yuzek Gainen Carroll & Bertolotti, LLP, New York, NY (John G. Nicolich and Jennifer B. Zourigui of counsel), for appellant National Grid Electric Services, LLC.
Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY (Matthew M. Guiney and Alexander H. Schmidt of counsel), Wolf Popper LLP, New York, NY (Lester L. Levy, Michele F. Raphael, Joshua W. Ruthizer, and Sean M. Zaroogian of counsel), Parker Waichman LLP, Port Washington, NY (Jerrold S. Parker and Jeffrey R. Messinger of counsel), and Douglas & London, P.C., New York, NY (Michael A. London and Virginia E. Anello of counsel), for respondents (one brief filed).



DECISION & ORDER
In a putative class action, inter alia, to recover damages for breach of contract, the defendants Long Island Power Authority and National Grid Electric Services, LLC, separately appeal from an order of the Supreme Court, Nassau County (Antonio I. Brandveen, J.), entered June 16, 2016. The order, insofar as appealed from by the defendant National Grid Electric Services, LLC, denied its motion for summary judgment dismissing the complaint insofar as asserted against it or, in the alternative, to compel arbitration of the breach of contract cause of action asserted against it and to stay all proceedings on that cause of action pending arbitration. The order, insofar as appealed from by the defendant Long Island Power Authority, denied its motion to compel arbitration of the causes of action asserted against it and to stay all proceedings on those causes of action pending arbitration or, in the alternative, to stay all proceedings on the causes of action asserted against it pending arbitration of the breach of contract cause of action asserted against the defendant National Grid Electric Services, LLC.
ORDERED that the order is modified, on the law, (1) by deleting the provision thereof denying that branch of the motion of the defendant National Grid Electric Services, LLC, which was to compel arbitration of the breach of contract cause of action asserted against it and to stay all proceedings on that cause of action pending arbitration, and substituting therefor a provision granting that branch of the motion, and (2) by deleting the provision thereof denying that branch of the motion of the defendant Long Island Power Authority which was to stay all proceedings on the [*2]causes of action asserted against it pending arbitration of the breach of contract cause of action asserted against the defendant National Grid Electric Services, LLC, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the defendant National Grid Electric Services, LLC, payable by the plaintiffs.
In this putative class action, the plaintiffs, individually and on behalf of others similarly situated, seek to recover, among other things, compensatory damages from Long Island Power Authority (hereinafter LIPA) and its former management services provider, National Grid Electric Services, LLC (hereinafter National Grid). The plaintiffs contend that they suffered damages as a result of the interruption of electric services that occurred in the wake of the October 2012 storm event known as Hurricane Sandy (cf. Connolly v Long Is. Power Auth., 30 NY3d 719, 725).
The complaint sought both damages and injunctive relief. As relevant here, the complaint alleged that LIPA's duties and obligations to its customers were governed by its Tariff for Electric Service (hereinafter Tariff), which has the force and effect of law. The complaint alleged that the plaintiffs were customers of LIPA and that they sustained damages as a result of LIPA's breach of the individual service agreements that it entered into with the plaintiffs.
The complaint further alleged that LIPA and National Grid entered into a Management Services Agreement (hereinafter the MSA) pursuant to which National Grid was responsible for the day-to-day operations and maintenance of LIPA's electricity transmission and delivery system. The complaint alleged that the plaintiffs were third-party beneficiaries of the MSA since they were the "known and intended recipients of the electric service that [National] Grid was responsible for providing." The complaint further alleged that the plaintiffs sustained damages as a result of National Grid's breach of the MSA.
LIPA made a pre-answer motion, inter alia, pursuant to CPLR 3211 to dismiss the plaintiffs' class action allegations and cause of action for injunctive relief insofar as asserted against it, and National Grid made a separate pre-answer motion, inter alia, pursuant to CPLR 3211 to dismiss the complaint insofar as asserted against it (see Matter of Long Is. Power Auth. Hurricane Sandy Litig., 134 AD3d 1119, 1119-1120). The Supreme Court denied both motions, and LIPA and National Grid separately appealed.
On those appeals, this Court modified the order appealed from (id. at 1119). This Court determined that the Supreme Court should have granted those branches of the defendants' separate motions which were to dismiss the cause of action for injunctive relief (id. at 1120-1121). However, this Court determined that those branches of the defendants' motions which were to dismiss the class action allegations were properly denied by the Supreme Court as premature (id. at 1120). This Court further concluded that National Grid was not entitled to dismissal of the cause of action alleging breach of the MSA since there were issues of fact as to whether the public was an intended third-party beneficiary of National Grid's contract with LIPA (id. at 1121-1122).
During the pendency of its appeal, National Grid served an answer in which it asserted, inter alia, that if the plaintiffs were third-party beneficiaries of the MSA as alleged in the complaint, then they were bound by the agreement as a whole, including the MSA's arbitration clause. LIPA also answered, but did not assert the requirement to arbitrate as an affirmative defense.
National Grid subsequently moved for summary judgment dismissing the complaint insofar as asserted against it or, in the alternative, to compel arbitration of the remaining cause of action asserted against it, alleging breach of contract, and to stay all proceedings on that cause of action pending arbitration. LIPA separately moved to compel arbitration of the remaining causes of action asserted against it and to stay all proceedings on those causes of action pending arbitration or, in the alternative, to stay all proceedings on the causes of action asserted against it pending arbitration of the breach of contract cause of action asserted against National Grid.
The Supreme Court, relying in part on this Court's prior determination that there were issues of fact as to whether the public was an intended third-party beneficiary of National Grid's contract with LIPA, and in part on the fact that discovery was incomplete, determined that the branch of National Grid's motion which sought summary judgment was "premature" and that issues of fact remained. The court further determined that both LIPA and National Grid had waived their right to compel arbitration. Accordingly, the court denied those branches of the defendants' separate motions which sought to stay the proceedings pending arbitration. LIPA and National Grid separately appeal.
As an initial matter, contrary to National Grid's contention, we agree with the Supreme Court's determination to deny that branch of National Grid's motion which was for summary judgment dismissing the complaint insofar as asserted against it. National Grid failed to demonstrate, prima facie, that the plaintiffs were not intended third-party beneficiaries of the MSA (see Matter of Long Is. Power Auth. Hurricane Sandy Litig., 134 AD3d at 1121-1122). Since National Grid failed to sustain its initial burden as the movant, we need not review the sufficiency of the plaintiffs' opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
However, the Supreme Court should have granted that branch of National Grid's motion which was to compel arbitration of the breach of contract cause of action asserted against it and to stay all proceedings on that cause of action pending arbitration.
"A written agreement to submit any controversy . . . to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award" (CPLR 7501). "A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration" (CPLR 7503[a]). "If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action" (CPLR 7503[a]).
Arbitration is a matter of contract "grounded in agreement of the parties" (County of Sullivan v Edward L. Nezelek, Inc., 42 NY2d 123, 128; see Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d 626, 630). "As a consequence, notwithstanding the public policy favoring arbitration, nonsignatories are generally not subject to arbitration agreements" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 630 [citation omitted]; see Degraw Constr. Group, Inc. v McGowan Bldrs., Inc., 152 AD3d 567, 569; see generally 1 Domke on Comm. Arb. § 13:1 [2016]).
"However, under limited circumstances nonsignatories may be compelled to arbitrate" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 630). "Under the direct benefits theory of estoppel, a nonsignatory may be compelled to arbitrate where the nonsignatory knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement" (id. at 631; see MAG Portfolio Consultant, GmbH v Merlin Biomed Group LLC, 268 F3d 58, 61 [2d Cir]). "The benefits must be direct, and the party seeking to compel arbitration must demonstrate that the party seeking to avoid arbitration relies on the terms of the agreement containing the arbitration provision in pursuing its claim" (Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d 646, 649-650; see generally 1 Domke on Com. Arb. § 13:11 [2016]). "Where the benefits are merely indirect,' a nonsignatory cannot be compelled to arbitrate a claim" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 631). "A benefit is indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself" (id.).
The Court of Appeals has recognized that "given the various nuances of contractual arrangements and that nonparties may derive some value from others' agreements, it can be difficult to distinguish between direct and indirect benefits" (id. at 633). "The guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause" (id.).
Here, National Grid was responsible for the day-to-day operations and maintenance [*3]of LIPA's electricity transmission and delivery system pursuant to the MSA. The plaintiffs were paying customers of LIPA and the recipients of the electric service that National Grid was responsible for providing under the terms of the MSA. In this action, the plaintiffs seek to recover compensatory damages for interruptions of service that allegedly arose out of National Grid's breach of the MSA. National Grid thus demonstrated that the plaintiffs derived a direct benefit from the MSA and that the plaintiffs are explicitly relying upon the terms of that agreement to support their claims against National Grid. Accordingly, under these circumstances, the plaintiffs should be compelled to arbitrate in accordance with the arbitration clause contained in the MSA by application of the direct benefits theory of estoppel (see BGC Notes, LLC v Gordon, 142 AD3d 435, 438; Mark Ross & Co., Inc. v XE Capital Mgt., LLC, 46 AD3d 296, 297; Matter of SSL Intl., PLC v Zook, 44 AD3d 429, 430; HRH Constr. LLC v Metropolitan Transp. Auth., 33 AD3d 568, 569; cf. Matter of Kramer Levin Naftalis & Frankel LLP v Cornell, 148 AD3d 430, 430).
The plaintiffs' contention that section 7.7 of the MSA requires that the dispute be litigated in the courts of the State of New York is without merit. The MSA expressly provides that section 7.7 is subordinate to the broad arbitration clause contained in section 7.8. Furthermore, as National Grid correctly contends, the MSA contains a delegation to the arbitrators of the power to determine arbitrability. Accordingly, to the extent that there are questions of fact as to whether this dispute falls within the scope of the arbitration provision contained in the MSA, or as to the plaintiffs' alleged status as third-party beneficiaries of the MSA, such issues are to be resolved by the arbitrators (see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 675-676; Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 46; Skyline Steel, LLC v PilePro LLC, 139 AD3d 646, 646-647; Matter of Gramercy Advisors LLC v J.A. Green Dev. Corp., 134 AD3d 652, 652).
Contrary to the Supreme Court's determination, National Grid did not waive its right to compel arbitration. "[A] litigant may not compel arbitration when its use of the courts is clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration" (Cusimano v Schnurr, 26 NY3d 391, 400; see Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d 59, 66; Matter of Cusimano v Berita Realty, LLC, 103 AD3d 720, 721; Estate of Castellone v JP Morgan Chase Bank, N.A., 60 AD3d 621, 623). "[S]ubstantial resort to the judicial process, such as moving for summary judgment after extensive discovery, reflects an intention to relinquish the right to arbitrate" (Singer v Jeffries & Co., 78 NY2d 76, 85; see Byrnes v Castaldi, 72 AD3d 718, 719-720; Estate of Castellone v JP Morgan Chase Bank, N.A., 60 AD3d at 623). However, the service of a pre-answer motion to dismiss does not constitute waiver of the right to arbitrate, since "a defendant is entitled to have the sufficiency of a complaint tested before a duty to seek arbitration arises" (Flynn v Labor Ready, 6 AD3d 492, 493; see Singer v Jeffries & Co., 78 NY2d at 85; Willer v Kleinman, 114 AD3d 850, 852; see also Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y., 45 NY2d 735, 737). Similarly, an appeal from the denial of a motion to dismiss does not result in waiver of the right to arbitrate (see Singer v Seavey, 83 AD3d 481, 482).
"In the absence of unreasonable delay, so long as the defendant's actions are consistent with an assertion of the right to arbitrate, there is no waiver" (Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d at 66 [internal quotation marks omitted]). " However, where the defendant's participation in the lawsuit manifests an affirmative acceptance of the judicial forum, with whatever advantages it may offer in the particular case, [its] actions are then inconsistent with a later claim that only the arbitral forum is satisfactory'" (id. at 66-67, quoting De Sapio v Kohlmeyer, 35 NY2d 402, 405; see Singer v Jeffries & Co., 78 NY2d at 85; Byrnes v Castaldi, 72 AD3d at 719-720). In determining whether a party has waived the right to arbitrate, a court should consider the amount of litigation that has occurred, the length of time between the start of the litigation and the arbitration request, and whether prejudice has been established (see Cusimano v Schnurr, 26 NY3d at 400).
Here, the actions of National Grid were consistent with an intent to insist on arbitration. National Grid was entitled to test the viability of the plaintiffs' complaint before both the Supreme Court and this Court (see Singer v Jeffries & Co., 78 NY2d at 85; Willer v Kleinman, [*4]114 AD3d at 852; Singer v Seavey, 83 AD3d at 482; Flynn v Labor Ready, 6 AD3d at 493). The fact that this engendered delay does not, without more, establish National Grid's waiver of the right to arbitrate, particularly where, as here, the record demonstrates that the action was stayed for the majority of that time, and the plaintiffs have not demonstrated, for example, that they expended significant resources in complying with discovery demands (see Matter of Gramercy Advisors LLC v J.A. Green Dev. Corp., 134 AD3d 652; Matter of Riggi [Lupe Constr. Co.], 176 AD2d 1177, 1179; Stoianoff v New Am. Lib., 148 AD2d 600, 601; Thyssen, Inc. v Calypso Shipping Corp., S.A., 310 F3d 102, 105 [2d Cir]).
In addition, notwithstanding the length of time between the plaintiffs' filing of their consolidated class action complaint and National Grid's motion to compel arbitration, the record demonstrates that the motion was served within seven weeks of this Court's determination of National Grid's prior appeal. Given a defendant's right to test the validity of the complaint (see Singer v Jeffries & Co., 78 NY2d at 85; Willer v Kleinman, 114 AD3d at 852; Singer v Seavey, 83 AD3d at 482; Flynn v Labor Ready, 6 AD3d at 493), this period of time cannot be characterized as an unwarranted delay. Under the circumstances of this case, the Supreme Court should not have determined that National Grid waived its right to compel arbitration. Accordingly, in light of the foregoing, the court should have granted that branch of National Grid's motion which was to compel arbitration of the breach of contract cause of action asserted against it and to stay all proceedings on that cause of action pending arbitration.
In contrast to the breach of contract cause of action against National Grid, the remaining causes of action against LIPA are based upon LIPA's Tariff and on the individual service agreements that LIPA entered into with the plaintiffs. Inasmuch as LIPA failed to demonstrate an independent basis upon which to compel arbitration, we agree with the Supreme Court's determination to deny that branch of LIPA's motion which was to compel arbitration of the causes of action asserted against it and to stay all proceedings on those causes of action pending arbitration. In light of the foregoing, we need not determine whether LIPA waived its right to compel arbitration.
However, the Supreme Court should have granted that branch of LIPA's motion which was to stay all proceedings on the causes of action asserted against it pending arbitration of the breach of contract cause of action asserted against National Grid. "[W]here arbitrable and nonarbitrable claims are inextricably interwoven, the proper course is to stay judicial proceedings pending completion of the arbitration, particularly where the determination of issues in arbitration may well dispose of nonarbitrable matters" (Weiss v Nath, 97 AD3d 661, 663 [internal quotation marks omitted]; see County Glass & Metal Installers, Inc. v Pavarini McGovern, LLC, 65 AD3d 940; Estate of Castellone v JP Morgan Chase Bank, N.A., 60 AD3d at 624; Matter of Colonial Coop. Ins. Co. [Muehlbauer], 46 AD3d 1012, 1014; see also Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d at 652).
Here, the record demonstrates that although its Tariff obligated LIPA to provide electric service to customers in its service area, LIPA was authorized to engage a manager to carry out its duties under the Tariff. By entering into the MSA with National Grid, LIPA exercised that option. Since the MSA contained a broad delegation of LIPA's transmission and maintenance duties to National Grid, the plaintiffs' allegations that LIPA failed to fulfill its duties to them are dependent in large part on whether National Grid met its contractual obligations to LIPA. Under these circumstances, the causes of action asserted against LIPA are inextricably interwoven with the breach of contract cause of action asserted against National Grid (see Weiss v Nath, 97 AD3d at 663-664), and the Supreme Court should have stayed all proceedings on the causes of action asserted against LIPA pending the outcome of arbitration of the breach of contract cause of action asserted against National Grid.
The plaintiffs' remaining contentions are without merit (see Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 601-602; Excel Group, Inc. v New York City Tr. Auth., 28 AD3d 708, 710; Adelphi Enters. v Mirpa, Inc., 33 AD2d 1019, 1020). LIPA's remaining contention is also without merit.
SCHEINKMAN, P.J., RIVERA, MILLER and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court