[876 NE2d 903, 845 NYS2d 217]

Linda A. Stark, Esq., Respondent, v Molod Spitz DeSantis & Stark, P.C., et al., Appellants.

Argued September 4, 2007; decided October 16, 2007

### POINTS OF COUNSEL

*Molod Spitz & DeSantis P.C.*, New York City (*Marcy Son-neborn* of counsel), for appellants. Defendant did not waive arbitration. (*Matter of Weinrott [Carp]*, 32 NY2d 190; *Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39; *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91; *Maross Constr. v Central N.Y. Regional Transp. Auth.*, 66 NY2d 341; *Matter of Siegel [Lewis]*, 40 NY2d 687; *Flynn v Labor Ready*, 6 AD3d 492; *Les Constructions Beauce-Atlas v Tocci Bldg. Corp. of N.Y.*, 294 AD2d 409; *Sherrill v Grayco Bldrs.*, 64 NY2d 261; *Matter of Zimmerman [Cohen]*, 236 NY 15; *Denihan v Denihan*, 34 NY2d 307.)

*Pollack, Pollack, Isaac & De Cicco*, New York City (*Brian J. Isaac* and *Diane K. Toner* of counsel), for respondent. Defendants manifested an intent to have the court settle the disputes by entering into the stipulation and by affirmatively engaging in motion practice. (*Sherrill v Grayco Bldrs.*, 64 NY2d 261; *Matter of Zimmerman [Cohen]*, 236 NY 15; *Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363; *De Sapio v Kohlmeyer*, 35 NY2d 402; *Preiss/Breismeister Architects v Westin Hotel Co.-Plaza Hotel Div.*, 56 NY2d 787; *Matter of Hosiery Mfrs. Corp. v Goldston*, 238 NY 22; *Matter of Haupt v Rose*, 265 NY 108; *Weiss v Weiss*, 228 AD2d 366; *Grenadeir Parking Corp. v Landmark Assoc.*, 294 AD2d 313; *Figueroa v Flatbush Women's Servs.*, 244 AD2d 453.)

### OPINION OF THE COURT

READ, J.

Beginning in 1996, plaintiff Linda A. Stark became an equity partner in defendant law firm, Molod Spitz DeSantis & Stark,

P.C. (now Molod Spitz & DeSantis). In 2000, plaintiff withdrew as an equity partner and became a contract partner under the terms of an employment agreement that she negotiated with the firm. The agreement provided for either party to terminate it upon 60 days' written notice. Further, "all controversies and claims" arising out of the "transaction[s] contemplated by" the agreement or its "construction, performance or breach" were to "be determined by binding arbitration."

On April 10, 2003, the firm gave plaintiff notice of termination. On May 22, 2003, after she had allegedly removed files after business hours and arranged for individual representation of clients in several pending cases, the firm locked her out of its offices.

By order to show cause dated June 2, 2003, plaintiff brought what Supreme Court ultimately regarded as a special proceeding,[1] asking for various forms of relief against the firm. Specifically, plaintiff sought to be substituted as counsel in certain identified pending personal injury lawsuits; to compel the firm to turn over files in these and any additional lawsuits in which the client requested substitution; to specify that the firm was to be reimbursed for disbursements already made in these lawsuits, but not until each case was finally resolved; to prohibit the firm from working on any files where the client chose plaintiff as counsel in lieu of the firm; to direct the firm to forward communications addressed to plaintiff and to safeguard her possessions at its offices until she retrieved them; to pay plaintiff her salary through June 13, 2003; to pay plaintiff for unused vacation time; and to reimburse plaintiff $1,850 for expenses incurred. The firm opposed the application and cross-moved, seeking imposition of retaining and charging liens, payment based on quantum meruit, the return of files, and

---

**1.** Documents in the record discuss and describe this litigation, but none of the actual pleadings or papers are included except the order to show cause and the stipulation of settlement, discussed later. In a decision filed on February 6, 2004, Supreme Court commented that plaintiff "erroneously referred to" her petition as an affirmation (2004 NY Slip Op 30150[U], *1). Accordingly, plaintiff appears to have commenced this action with an order to show cause supported by her affirmation, which Supreme Court ultimately treated as the petition in a special proceeding. The record does not disclose the basis for the trial court's evident conclusion that a special proceeding (as opposed to a plenary action) was authorized under the circumstances (see Siegel, NY Prac § 547, at 943-944 [4th ed]).

reimbursement of $38,000 in disbursements. In its opposition papers, the firm cited the agreement's arbitration clause, but did not move to compel arbitration.

Upon the return date of the order to show cause, plaintiff and the firm's senior partner negotiated a stipulation of settlement. This handwritten "so-ordered" stipulation, dated June 17, 2003, promptly resolved disputes regarding pending cases in which plaintiff wished to continue to represent clients. The firm agreed to execute consents to change attorneys and to forward to plaintiff all files, communications and phone calls in the lawsuits identified in the order to show cause, as well as in any others where the client consented to a change of attorney; and plaintiff agreed to open a joint escrow account with the firm in the amount of $38,000 (less the disbursements in one specific matter) and to reimburse the firm from this account for already-made disbursements at the conclusion of each lawsuit where plaintiff was substituted as counsel. The parties committed to comply with these provisions within 48 hours; the firm reserved its right to claim a share of attorneys' fees in any case "referred to" in the order to show cause. Finally, the stipulation included a mutual reservation-of-rights clause, which recited that "[t]his Stipulation should not otherwise be construed as a waiver of any rights or remedies that [plaintiff] or [the firm] may seek to obtain against one another."

In October 2003, plaintiff commenced a plenary action against the firm and its shareholders, Frederick M. Molod, Alice Spitz and Salvatore J. DeSantis (hereafter collectively, the firm). The firm moved to dismiss the complaint or, alternatively, to stay the action and compel plaintiff to arbitrate; and plaintiff cross-moved to stay arbitration. In a decision filed on February 6, 2004, Supreme Court labeled the complaint "a nullity" inasmuch as it bore the same index number as the special proceeding (*id.* at *2).[2] As a result, "there [was] no need to dismiss since no action [had] been commenced" (*id.* at *2). Concomitantly, plaintiff's cross motion to stay arbitration was "moot since the firm only sought arbitration in the event [the] court found the complaint to be valid" (*id.*).

In the same decision, Supreme Court also denied the firm's motion and plaintiff's cross motion to enforce and/or set aside

---

**2.** The record does not include a copy of this complaint, which Supreme Court in her decision described as having asserted causes of action for "breach of contract, violation of the New York City Human Rights Law and interference and harassment with [plaintiff's] law practice" (*id.* at *1).

the stipulation.[3] The court took the position that the special proceeding had been terminated within the meaning of *Teitelbaum Holdings v Gold* (48 NY2d 51, 53 [1979] ["A settlement agreement entered into by parties to a lawsuit does not terminate the action unless there has been an express stipulation of discontinuance or actual entry of judgment in accordance with the terms of the settlement"]). As a result, Supreme Court advised the parties that if they "wish[ed] to set aside or enforce the stipulation," they were required to "institute a plenary action under a new index number and may not proceed, as here, by motion in a disposed case" (2004 NY Slip Op 30150[U], at *2). Supreme Court ruled, however, that "[i]n any event, neither of the parties [had] established entitlement to the requested relief" relating to the stipulation (*id.*).

On April 1, 2004, plaintiff served a second complaint (with a newly purchased index number), which asserted five causes of action. The first cause of action alleged breach of contract; specifically, that the firm had "wrongfully terminated [plaintiff's] partnership contract on April 10, 2003." The second cause of action alleged gender discrimination prohibited by the New York City Human Rights Law; specifically, that the firm had discriminated, harassed and retaliated against plaintiff because of her gender and had "subjected [her] to a hostile work environment without any reasonable avenue for complaint," all of which "had the purpose and effect of unreasonably interfering with [her] ability to obtain and perform work[ ] [and] work assignments, and created an intimidating, hostile and offensive working environment." The third cause of action claimed that the firm had wrongfully locked plaintiff out of her office on May 22, 2003, withheld client files, worked on files after she had been chosen as client's counsel, and refused to execute consents to change attorneys until she forced the issue through litigation. The third cause of action also alleged that the firm had in the past and continued to neglect to forward her mail and phone calls, and "subvert[ed]" her clients and prospective clients. The fourth cause of action sought "wrongfully withheld salary, vaca-

---

**3.** The record does not include a copy of these documents. Based on Supreme Court's decision, the firm complained about how plaintiff was handling the joint escrow account, and requested that she be required to reimburse it immediately for disbursements in the cases covered by the stipulation. The firm also moved for sanctions. For her part, plaintiff accused the firm of withholding disbursement documentation from transferred case files. She sought an order vacating the provision in the stipulation for a joint escrow account.

tion pay, expense money and bonus money." The fifth cause of action for defamation alleged that the firm "knowingly made false accusations about [plaintiff] in letters, and affirmations, to judges, court personnel, clients, lawyers, bankers, and other members of the community with the intent to defame, slander and assault [her], injuring her professionally and personally."

Plaintiff claimed that as a result of the firm's conduct she had been "severely damaged" and had "suffered substantial economic damage," including "loss of back pay with interest and other employment related benefits, front pay, diminution in profit from her practice, loss of profit sharing, severe humiliation, embarrassment, mental anguish, sleeplessness, physical and medical harm together with psychic injury, all of which caused [her] to become physically debilitated." She sought compensatory and punitive damages in the amount of $10 million in the first, second, third and fifth causes of action, and $250,000 in damages in the fourth cause of action.

By notice of motion dated April 8, 2004, the firm sought an order pursuant to the Judiciary Law from the Supreme Court with jurisdiction over a personal injury lawsuit covered by the stipulation to determine the fees and disbursements owing plaintiff and the firm respectively from June 2003 until November 2003, when the case settled. Similarly, by notice of motion dated April 21, 2004, the firm sought an order from the Supreme Court with jurisdiction over another matter covered by the stipulation to confirm a special referee's report dated April 15, 2004, which allocated attorneys' fees between the firm and plaintiff, and to direct plaintiff to reimburse the firm its disbursements in the case. By order to show cause dated April 27, 2004, plaintiff asked Supreme Court to prevent the firm from "mov[ing] before the trial judges to whom cases were assigned to have the respective fees of plaintiff and [the firm] determined, and for the payment of disbursements." She took the position that any requested fee determinations necessarily involved the same matters raised in her recently filed complaint, and that disbursements were covered by the stipulation.

In lieu of an answer, on April 20, 2004, the firm moved to dismiss plaintiff's complaint "on the grounds, among others, that the action [was] barred by an arbitration provision in the Employment Agreement" or, alternatively, to "stay[ ] the action and compel[ ] Plaintiff to proceed with Arbitration." On May 5, 2004, plaintiff cross-moved to stay arbitration; to deny the firm's motion; to restrain the firm from seeking its share of fees and

disbursements pursuant to the Judiciary Law; and to grant her summary judgment on that portion of her fourth cause of action seeking unpaid wages, vacation pay and expenses. She averred that between September 2003 and April 2004, the firm had served motions "seeking a determination of fees" by the trial courts in three personal injury actions.

Supreme Court dismissed the first, third and fourth causes of action, evidently reasoning that they were sufficiently related to the special proceeding to have been resolved by the stipulation; and dismissed the fifth cause of action for defamation for failure to state a claim with particularity as required by CPLR 3016 (a). The court determined, however, that plaintiff's second cause of action for gender discrimination fell within the ambit of the agreement's arbitration clause, and that the firm had not abandoned or waived the right to arbitrate. Accordingly, Supreme Court granted the firm's motion insofar as it sought to stay the second cause of action, and directed the parties to proceed to arbitration; and denied plaintiff's cross motion (2004 NY Slip Op 30149[U]). Plaintiff appealed everything except the dismissal of her fifth cause of action for defamation.

The Appellate Division, with one Justice dissenting in part, took a different view from Supreme Court, and so reinstated the first, third and fourth causes of action; denied the firm's motion insofar as it sought to compel arbitration; and granted plaintiff's cross motion to stay arbitration. Addressing whether the firm waived the right to arbitrate, the court observed that

> "plaintiff initiated both the special proceeding and the instant plenary action. In response to the special proceeding [the firm] did not move to compel arbitration. Rather, [it] elected to enter into the stipulation, which was 'so-ordered' by the justice assigned to the then-pending judicial proceeding, redressing issues between the parties that were embraced by the arbitration clause in the employment agreement. Additionally, [the firm] litigated the issue of the division of attorneys' fees between the firm and plaintiff in two other actions . . . despite the fact that the issue of the division of attorneys' fees between the parties was addressed in . . . the employment agreement, and concomitantly subject to the arbitration clause" (29 AD3d 481, 485 [1st Dept 2006] [citations omitted]).

The Appellate Division decided that by "actively participat[ing]

in a special proceeding and two plenary actions that involved matters falling within the ambit of the arbitration clause, thereby manifesting an affirmative acceptance of the judicial forum," the firm had waived its contractual right to compel arbitration (*id.*). In light of this disposition, the court did not address plaintiff's argument that her claim of gender discrimination was not arbitrable anyway, irrespective of waiver. The firm sought leave to appeal, which we granted as to so much of the Appellate Division's order as resolved plaintiff's motion to stay and the firm's motion to compel arbitration.[4]

We have repeatedly recognized New York's "long and strong public policy favoring arbitration" (*Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39, 49 [1997]). Indeed, "this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. Therefore, New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration" (*id.* at 49-50 [citations and internal quotation marks omitted]). Nonetheless, "[l]ike contract rights generally, a right to arbitration may be modified, waived or abandoned" (*Sherrill v Grayco Bldrs.*, 64 NY2d 261, 272 [1985]). Accordingly, a litigant may not compel arbitration when its use of the courts is "clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration" (*Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363, 372 [2005] [citations and internal quotation marks omitted] [assuming arbitration clause in contract applied to dispute, party seeking its benefit did not assert arbitration as defense in answer or move to compel, electing instead to participate in litigation for 16 months through discovery and filing of note of issue]). As we have further explained,

> "[t]he crucial question . . . is what degree of participation by the defendant in the action will create a waiver of a right to stay the action. In the absence of unreasonable delay, so long as the defendant's actions are consistent with an assertion of the right to arbitrate, there is no waiver. However, *where the defendant's participation in the lawsuit manifests an affirmative acceptance of the judicial forum*, with whatever advantages it may offer in the

---

4. The portion of the order reinstating causes of action is not at issue on this appeal because it is nonfinal (*see* 7 NY3d 856 [2006]).

particular case, *his actions are then inconsistent with a later claim that only the arbitral forum is satisfactory"* (*De Sapio v Kohlmeyer*, 35 NY2d 402, 405 [1974] [emphasis added]; *see also Singer v Jefferies & Co.*, 78 NY2d 76, 85 [1991] [under the Federal Arbitration Act, moving to dismiss before moving to compel arbitration "should not be considered a waiver unless the opposing party demonstrates prejudice"]).

Further, "[n]ot every foray into the courthouse effects a waiver of the right to arbitrate. . . . [W]here urgent need to preserve the status quo requires some immediate action which cannot await the appointment of arbitrators, waiver will not occur" (*Sherrill*, 64 NY2d at 273, citing *Preiss/Breismeister Architects v Westin Hotel Co.-Plaza Hotel Div.*, 56 NY2d 787, 789 [1982]).

Here, the firm opposed plaintiff's June 2003 application and cross-moved for affirmative relief related solely to its fees and disbursements in enumerated personal injury lawsuits that plaintiff sought to retain. In June 2003, the firm entered into a stipulation resolving disputes over substitution of counsel in these lawsuits, the transfer of files, and the timing of its reimbursement for disbursements. The firm specifically reserved its right to attorneys' fees, and later moved in the trial courts to recover attorneys' fees and disbursements in lawsuits covered by the stipulation and litigated to conclusion by plaintiff. Additionally, the firm at one point moved to enforce the stipulation. We conclude that these "foray[s] into the courthouse" (*Sherrill*, 64 NY2d at 273), cumulatively, do not as a matter of law "manifest[ ] an affirmative acceptance of the judicial forum" such that the firm's "actions [were] then inconsistent with [its] later claim that only the arbitral forum [was] satisfactory" (*De Sapio*, 35 NY2d at 405) for resolving the employment-related claims subsequently advanced by plaintiff.

While the facts in this record do not bespeak exigency of the type addressed in *Preiss/Breismeister*, the principle for which we cited that case in *Sherrill* still applies: There is no waiver of arbitration where urgent need justifies resort to the courts. The stipulation minimized any interruption of plaintiff's representation of her clients. As a practical matter, if the firm had insisted upon arbitration in response to plaintiff's application to Supreme Court in June 2003 to secure files and consents to change attorneys, postpone payment of disbursements and the like, neither plaintiff's nor her clients' interests would have

been well served by the inevitable attendant delay. Further, at that juncture the firm might have reasonably expected the stipulation to short-circuit potential future litigation except with respect to attorneys' fees and disbursements in the transferred cases, and thus to obviate the need for arbitration.

Notably, the motions in the trial courts seeking attorneys' fees and disbursements were contemplated by the stipulation, and the firm's only other affirmative motion subsequent to the stipulation sought to enforce it. Thus, all of the firm's ventures in Supreme Court addressed or grew out of plaintiff's June 2003 application for emergency relief to allow her to continue to represent clients in pending personal injury lawsuits. Some of these lawsuits were obviously being actively litigated at the time, or at least were nearing their eventual conclusion in late 2003 and early 2004.

Further, the parties included a mutual reservation-of-rights provision in the stipulation. This preserved the firm's right under the agreement to demand arbitration in the event plaintiff later elected to pursue employment-related grievances not covered by the stipulation. When plaintiff eventually put these claims forward in plenary actions brought in October 2003 (later declared a "nullity") and April 2004, the firm moved for orders to stay the actions and compel plaintiff to arbitrate. The firm did not file an answer; it engaged in no discovery.

As a final matter, while the firm has not waived arbitration of the second cause of action, the parties dispute whether plaintiff's claim for gender discrimination is arbitrable. As noted previously, the Appellate Division did not reach this issue.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the case remitted to that court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order, insofar as appealed from, reversed, etc.