## Matter of Kennelly v Myron & Selina Siegel Family Ltd. Partnership LP

2024 NY Slip Op 33278(U)

September 17, 2024

Supreme Court, New York County

Docket Number: Index No. 654950/2023

Judge: Shahabuddeen Abid Ally

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**    <u>HON. SHAHABUDDEEN ABID ALLY</u>      **PART 16M**

*Justice*

---

In the Matter of the Petition of

JAMES KENNELLY and 38 LEXINGTON AVENUE, LLC,

            Petitioner,

For an Order Staying Arbitration of a Certain Controversy

        -against-

MYRON AND SELINA SIEGEL FAMILY LIMITED
PARTNERSHIP LP,

            Respondent,

---

| | |
|---|---|
| **INDEX NO.** | 654950/2023 |
| **MOTION DATE** | 9/12/2024 |
| **MOTION SEQ. NO.** | 001[1] |

# DECISION & ORDER

---

> The following e-filed documents, listed by NYSCEF document number, were read on this motion (Seq. No. 1) to/for **ARTICLE 75 (STAY ARBITRATION)**: 1-9, 14, 17-24, 27-34

In this special proceeding, petitioners JAMES KENNELLY ("<u>Kennelly</u>") and 38 LEXING-TON AVENUE, LLC ("<u>38 Lexington</u>"; and, together with Kennelly, "<u>Petitioners</u>") move by Notice of Petition for an order, pursuant to CPLR § 7503(c), permanently staying the arbitration that respondent MYRON AND SELINA SIEGEL FAMILY LIMITED PARTNERSHIP LP ("<u>Respondent</u>") commenced before the American Arbitration Association ("<u>AAA</u>") on September 25, 2023, as Case No. 01-23-0004-2166. Petitioners commenced this proceeding by Verified Petition on October 9, 2023. Respondent opposes the application and cross-moves, by cross-motion filed on November

---

[1] Petitioners filed their Notice of Petition on October 9, 2023 (NYSCEF Doc. 9), but then subsequently filed an Order to Show Cause ("<u>OSC</u>") on October 17, 2023 (*id.* Doc. 12). Because the OSC sought the same relief as the Notice of Petition, the Court declined to sign the OSC. (*Id.* Doc 25) There appears, unfortunately, to be some confusion and discrepancies as to the assignment of motion sequences between the Notice of Petition and the OSC. Although the OSC was filed *after* the Notice of Petition, the OSC was assigned Motion Sequence No. 1 in NYSCEF, while the earlier-filed Notice of Petition was assigned Motion Sequence No. 2. The Court, when it uploaded its decision declining to sign the OSC, did so in connection with Motion Sequence No. 2—according to NYSCEF, the Notice of Petition. The Clerk, however, marked Motion Sequence No. 1 as "declined to sign" in the Court's internal Universal Case Management System ("<u>UCMS</u>"). The correct designations are as follows: (a) the Notice of Petition should be assigned Motion Sequence No. 1 in both NYSCEF and UCMS and should, pursuant to this Decision and Order, be marked "decided"; and (b) the OSC should be assigned Motion Sequence No. 2 in both NYSCEF and UCMS and should, pursuant to the Court's prior decision not to sign it, be marked "declined to sign."

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**      **Page 1 of 10**
**Mot. Seq. No. 1**

[* 1]

9, 2023, to dismiss the Verified Petition pursuant to CPLR 3211(a)(1), (2), and (7) and for costs and expenses. For the reasons discussed below, the Notice of Petition is **DENIED**, the cross-motion is **GRANTED IN PART**, and the Verified Petition is **DISMISSED**.

## I.     BACKGROUND

Kennelly and nonparty Myron Siegel are business partners in a real-estate development venture. (*See* Verified Pet. (NYSCEF Doc. 1) ¶ 8) The corporate vehicle for that venture is Kelly Six Star, LLC ("KSS"), a New York limited-liability company. (*See id.*) Kennelly formed 38 Lexington to hold his 44.1% interest in KSS. (*Id.* ¶ 11) Seigel's 49.9% interest in KSS is held through Respondent. (*Id.*) The remaining 6% of KSS is held by Guy Shmuel, Seigel's son-in-law. (*Id.* ¶¶ 10-11) 38 Lexington, Respondent, and Mr. Shmuel are each members of KSS, and Mr. Shmuel and Kennelly are its managers. (*Id.* ¶ 12; s*ee also id.* Ex. A (NYSCEF Doc. 2), art. I, "Member" definition). The parties' relationship is governed by the Amended and Restated Limited Liability Company Operating Agreement of Kelly Six Star, LLC, dated as of April 12, 2019 (the "Operating Agreement"). (*See* Verified Pet. ¶ 4; *id.* Ex. A)

In its Demand for Arbitration, Respondent alleges that KSS and its managers failed to pay Respondent all of the monies owed to it under the Operating Agreement, including the proper distributive share of KSS's net profits, and failed to properly manage and operate the venture's property. (*Id.* Ex. B (NYSCEF Doc. 3), ¶ 6) For these alleged breaches of the Operating Agreement, Respondent seeks monetary damages between $1 million and $10 million, plus interest and legal fees and expenses. (*Id.* ¶ 21)

The instant dispute concerns whether Respondent's claims may be maintained in arbitration. Two provisions of the Operating Agreement, sections 12.13 and 12.14, are relevant. Section 12.13, entitled "Arbitration," provides:

> Each Member agrees that the arbitration procedures set forth below shall be the sole and exclusive method for resolving and remedying claims for money damages arising out of a breach of this Agreement (the "Disputes"); provided that nothing in this Section 12.13 shall prohibit a party hereto from instituting litigation to enforce any Final Determination (as defined below). The Members hereby acknowledge and agree that, except as otherwise provided in this Section 12.13 or in the Commercial Arbitration Rules (the "Rules") promulgated by the American Arbitration Association as in effect from time to time, the arbitration procedures and any Final Determination hereunder shall be governed by, and shall be

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.** **Page 2 of 10**
**Mot. Seq. No. 1**

enforced pursuant to, the United States Arbitration Act, 9 U.S.C. § 1 et. seq. If the Members are unable to select a mutually acceptable arbitrator, then they agree that the arbitrator shall be selected by the American Arbitration Association in accordance with the Rules.

(b) In any arbitration pursuant to this Agreement, . . . (ii) the award or decision shall be rendered by a single independent arbitrator, who is a licensed attorney in the State of New York and experienced in handling disputes of the type presented in the Dispute and who shall be appointed by mutual agreement of the parties in dispute; provided, that if the Dispute relates primarily to accounting issues the arbitrator should be a licensed certified public accountant in the State of New York experienced in handling disputes of the type presented in the Dispute. The arbitration shall be conducted in New York, NY, under the Rules as in effect from time to time. The arbitrator shall conduct the arbitration so that a final result, determination, finding, judgment and/or award (the "Final Determination") is made or rendered as soon as practicable.

(c) Any applicable Member may enforce any Final Determination in any state or federal court of competent jurisdiction. For the purpose of any action or proceeding instituted with respect to any Final Determination, each party hereto hereby irrevocably submits to the jurisdiction of such courts, irrevocably consents to the service of process by registered mail or personal service and hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter have as to personal jurisdiction, the laying of the venue of any such action or proceeding brought in any such court and any claim that any such action or proceeding brought in any court has been brought in an inconvenient forum.

(*Id.* Ex. A, § 12.13) Section 12.14, entitled "Venue," provides, in relevant part:

Any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with this Agreement or the transactions contemplated hereby or thereby may be brought in any state or federal court in The City of New York, Borough of Manhattan, and each Member hereby consents to the exclusive jurisdiction of any court in the State of New York (and of the appropriate appellate courts therefrom) in any suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection which he, she, or it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum. Each Member hereby waives the right to commence an action, suit or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with this Agreement or the transactions contemplated hereby or thereby in any court outside of The City of New York, Borough of Manhattan.

(*Id.* Ex. A, § 12.14)

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**
**Mot. Seq. No. 1**

**Page 3 of 10**

## II.   LEGAL STANDARD

Respondent moves to dismiss Petitioners' Verified Petition pursuant to CPLR 3211(a)(1), (2), and (7).

Under New York's "well-established liberal pleading standards," in deciding a motion to dismiss pursuant to CPLR 3211, a court must "assume all facts asserted in the complaint to be true and draw all reasonable inferences from those assertions." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 51 (2022) (collecting cases). After giving the plaintiff the benefit of all reasonable inferences, a court must "determine only whether the alleged facts fit within any cognizable legal theory." *Sassi v. Mobile Life Support Servs., Inc.*, 37 N.Y.3d 236, 239 (2021) (internal quotation marks and citation omitted). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss." *Carlson v. Am. Int'l Grp., Inc.*, 30 N.Y.3d 288, 298 (2017) (internal quotation marks and citation omitted).

CPLR 3211(a)(1) provides that a court may dismiss a proceeding based upon "documentary evidence." Dismissal is warranted under 3211(a)(1) only where "the documentary evidence submitted conclusively establishes a defense to the asserted claim as a matter of law." *Carlson*, 30 N.Y.3d at 298 (internal quotation marks omitted). Evidence qualifies as documentary evidence within the meaning of 3211(a)(1) only if it is "unambiguous," "essentially undeniable," and of "undisputed authenticity." *VXI Lux Holdco S.A.R.L. v. SIC Holdings, LLC*, 171 A.D.3d 189, 193 (1st Dep't 2019) (citation omitted). Qualifying evidence includes "documents reflecting out of court transactions such as 'mortgages, deeds, contracts, and any other papers, the contents of which are essentially undeniable.'" *Unlimited Assets, Inc. v. PennyMac Corp.*, 75 Misc. 3d 1238(A), at *2 (N.Y. Sup. Ct. Bronx Cty. Aug. 8, 2022) (quoting *Magee-Boyle v. Reliastar Life Ins. Co. of N.Y.*, 173 A.D.3d 1157, 1159 (2d Dep't 2019)).

CPLR 3211(a)(2) provides that a court may dismiss a proceeding or a cause of action because the court does not have jurisdiction over the subject matter of the proceeding or cause of action.

CPLR 3211(a)(7) provides that a court may dismiss a proceeding for failure to state a cause of action. On a motion to dismiss brought pursuant to CPLR 3211(a)(7), a court "must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**   **Page 4 of 10**
**Mot. Seq. No. 1**

4 of 10

plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Constructamax, Inc. v. Weber*, 109 A.D.3d 574, 574 (2d Dep't 2013).

## III.   DISCUSSION

The motion and cross-motion present three overarching issues for resolution:  (1) whether the parties agreed to arbitrate the claims asserted by Respondent in the AAA arbitration; (2) whether it is for the court or an arbitrator to determine the threshold issue of the arbitrability of those claims; and (3) whether Respondent is entitled to recover its costs and expenses incurred in defending this proceeding.

### A.   The Parties Agreed to Arbitrate

Initially, the arbitration clause in Section 12.13 of the Operating Agreement is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* because the parties expressly agreed that the FAA would govern. *Acevedo v. Citibank, N.A.*, 83 Misc. 3d 706, 724-25 (N.Y. Sup. Ct. Bronx Cty. 2024) (collecting cases). The FAA "was 'enacted to replace judicial indisposition to arbitration,' and is an expression of a 'strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)). Indeed, it has been observed that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [courts] have often and emphatically applied." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks and citation omitted). New York similarly views arbitration as a means of "conserving the time and resources of the courts and the contracting parties." *Am. Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.*, 35 N.Y.3d 64, 70 (2020) (quoting *Nationwide Gen. Ins. Co. v. Investors Ins. Co. of Am.*, 37 N.Y.2d 91, 95 (1975)). Accordingly, "New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." *Stark v. Molod Spitz DeSantis & Stark, P.C.*, 9 N.Y.3d 59, 66 (2007) (internal quotation marks and citation omitted).

An arbitration agreement's very existence, as opposed to its validity or enforceability, is always a matter for a court's determination. *Wu v. Uber Techs., Inc.*, 78 Misc. 3d 551, 580-81 (N.Y. Sup. Ct. Bronx Cty. 2022) (collecting cases), *aff'd*, 219 A.D.3d 1208 (1st Dep't 2023). State law, in

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**      **Page 5 of 10**
**Mot. Seq. No. 1**

[* 5]

5 of 10

turn, governs whether an arbitration agreement exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Here, there is no dispute that the parties entered into the Operating Agreement and that it is a valid, binding agreement. Section 12.13 of the Operating Agreement unambiguously provides that the parties agree that the "sole and exclusive method for resolving and remedying claims for money damages arising out of a breach" of the Operating Agreement is through arbitration pursuant to the AAA's Commercial Arbitration Rules. (Verified Pet. Ex. A, § 12.13) Thus, the parties agreed to submit to arbitration the claims asserted by Respondent in the AAA arbitration proceeding.

Petitioners' argument that the Operating Agreement's separate venue provision, Section 12.14, conflicts with the arbitration provision and, as such, there was no meeting of the minds is meritless. "It is a cardinal rule of contract construction that a court should avoid an interpretation that would leave contractual clauses meaningless." *Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC*, 149 A.D.3d 127, 133 (1st Dep't 2017) (internal quotation marks and citation omitted). "[C]onflicting contract provisions should be harmonized, if reasonably possible, so as not to leave any provision without force and effect." *Id.* at 133-34 (internal quotation marks and citation omitted). Courts have routinely harmonized provisions similar to those in question here in favor of finding the existence of an arbitration agreement. *See, e.g.*, *Westport Ins. Corp. v. HBC US Holdings Inc.*, 206 A.D.3d 520, 521 (1st Dep't 2022) ("[T]he arbitration clause and the exclusive jurisdiction provision can be read in harmony giving each full effect."); *Edgewater Growth Capital Partners, L.P. v. Greenstar N. Am. Holdings, Inc.*, 69 A.D.3d 439 (1st Dep't 2010); *Isaacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 184-85 (1st Dep't 2000) ("The express provision in the parties' agreement to arbitrate disputes was not negated by an additional clause in the agreement vesting the courts of this State with exclusive jurisdiction in all actions and proceedings, particularly where there was no express denial of the agreement to arbitrate."); *181 E. 64 LLC v. Mindel Residential Props., L.P.*, No. 650940/2023, 2023 WL 3582987 (N.Y. Sup. Ct. N.Y. Cty. May 19, 2023) (Ally, J.); *Lui v. Town of E. Hampton*, No. 14988/2008, 2013 WL 9805874, at *2 (N.Y. Sup. Ct. Suffolk Cty. Feb. 28, 2013).

Sections 12.13 and 12.14 of the Operating Agreement are easily harmonized as well. Section 12.13 provides that a specific type of claim—one for money damages—shall be resolved

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**          **Page 6 of 10**
**Mot. Seq. No. 1**

through arbitration. That provision then goes on to state that the arbitration mandate does not "prohibit a party hereto from instituting litigation to enforce any" final arbitration determination. (Verified Pet. Ex. A, § 12.13) Section 12.14, by contrast, provides that any "suit, action or proceeding" seeking to enforce any provision of the Operating Agreement, or any matter arising out of the agreement, "may be brought in any state or federal court" located in New York County and that the parties consent to exclusive jurisdiction in any such court. (*Id.* § 12.14) *First*, Section 12.13 only applies to claims for money damages; therefore, any claims for equitable or other relief—*e.g.*, specific performance or *to stay or compel arbitration*—must be brought in a court, and Section 12.14 would apply to any such suit. *See Isaacs*, 278 A.D.2d at 185 ("The purpose of the exclusive jurisdiction provision was simply to fix the required venue of applications to compel arbitration or confirm or reject arbitration awards." (internal quotation marks omitted)). *Second*, Section 12.13 itself contemplates suits in court to enforce any arbitration award, and thus Section 12.14 would govern where those types of suits could be brought. *Id. Third*, Section 12.13 is a specific, mandatory clause for arbitration while Section 12.14 is a general clause concerning venue and personal jurisdiction, and "the *ejusdem generis* principle of contract interpretation here gives precedence" to the former rather than the latter. *Id.*

In sum, the plain language of Sections 12.13 and 12.14 permits an interpretation that does not result in an irreconcilable conflict between the two provisions or in one provision being rendered meaningless. The cases on which Petitioners rely to argue in support of an opposite conclusion are simply inapposite.

**B.      The Parties Delegated Questions of Arbitrability to the Arbitrator**

In the Verified Petition, Petitioners also contend that Respondent's claims in the AAA arbitration are all derivative in nature and should be precluded on that ground as well. Respondent argues, in turn, that this is a question of the arbitrability of the claims, which question the parties agreed, by incorporation of the AAA Commercial Arbitration Rules in Section 12.13, would be resolved by the arbitrator. In their reply, Petitioners do not attempt to refute Respondent's argument.

The Court agrees with Respondent that an arbitrator must decide whether Respondent may maintain its claims against Petitioners. There is no dispute that Section 12.13 provides that any arbitration between the parties will be conducted according to the AAA Commercial

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**                    **Page 7 of 10**
**Mot. Seq. No. 1**

Arbitration Rules. Those rules, which are publicly available, provide, in relevant part, that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Am. Arbitration Assoc., *Consumer Arbitration Rules* R-14 (eff. Sept. 1, 2014), *available at* http://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf.) Caselaw is clear and consistent that incorporation of these rules into an arbitration agreement delegates the issue of arbitrability to the arbitrator. *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's*, 66 A.D.3d 495, 495-96 (1st Dep't 2009), *aff'd*, 14 N.Y.3d 850 (2010); *Surgical Specialists of Greater N.Y. v. Aetna, Inc.*, No. 654667/2022, 2023 WL 3203587, at *2 (N.Y. Sup. Ct. N.Y. Cty. May 2, 2023).

Accordingly, Petitioners' challenge to Respondent's claims in arbitration on the grounds of their allegedly derivate nature or alleged lack of proper service or notice raise issues of arbitrability that must be resolved by the arbitrator.

### C. Respondent Is Not Entitled to Costs and Expenses

Respondent seeks to recover its fees and expenses, including legal fees, incurred in defending this proceeding pursuant to Section 10.02(c) of the Operating Agreement, which provides:

> Each Member hereby agrees to indemnify and hold the Company [KSS] and each other Members wholly and completely harmless from and against any liability, cost, damage or expense that any such Indemnified Party may incur (including reasonable legal and accounting fees and other expenses incurred in defending against such liability, cost, damage or expense) as a result of such Member's fraud, gross negligence, willful misconduct or material breach of this Agreement. No amount paid hereunder shall be treated as a Capital Contribution by the Member making such payment.

(Verified Pet. Ex. A, § 10.02(c)) Respondent argues that Petitioners materially breached the Operating Agreement by commencing this proceeding and engaged in willful misconduct through the arguments that they made or failed to make herein.

The Court is unconvinced that moving to stay arbitration based on a mistaken, but seemingly good faith, interpretation of the subject arbitration and venue provisions rises to the level of a material breach of the Operating Agreement or constitute willful misconduct. Respondent has provided no citation to any caselaw in which a court has found a material breach or willful misconduct under similar circumstances. The Court, therefore, denies that branch of Respondent's motion seeking costs and expenses.

Accordingly, it is hereby:

**ORDERED and ADJUDGED** that Respondent's cross-motion to dismiss and for costs and expenses (Seq. No. 1) is **GRANTED IN PART as set forth herein**, and the Verified Petition is **DISMISSED**; and it is further

**ORDERED** that Petitioners' Notice of Petition (Seq. No. 1) is **DENIED**, it is further

**ORDERED** that the Clerk shall follow the Court's directions in Footnote 1 above to correct the assignment of Motion Sequence Numbers between the Notice of Petition and the OSC; and it is further

**ORDERED** that Respondent shall serve a copy of this Decision and Order upon Petitioners and upon the Clerk of the General Clerk's Office with notice of entry within twenty (20) days thereof; and it is further

**ORDERED** that service upon the Clerk of Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (Revised August 15, 2019);[2] and it is further

**ORDERED** that any requested relief not expressly addressed herein has been considered and is denied; and it is further

**ORDERED** that the Clerk shall mark Motion Sequence Nos. 1 and 2 "decided" or "declined to sign," as appropriate (*see* Footnote 1), in all court records; and it is further

**ORDERED** that the Clerk shall mark this proceeding disposed in all court records.

This constitutes the decision, order, and judgment of the Court.

---

[2] The protocols are available at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf.

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**      **Page 9 of 10**
**Mot. Seq. No. 1**

September 17, 2024
DATE

SHAHABUDDEEN ABID ALLY, A.J.S.C.

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| MOTION: | | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| CROSS-MOTION | | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| CHECK IF APPROPRIATE: | | | SETTLE ORDER | | | | SUBMIT ORDER | | STAY CASE |
| | | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**654950/2023 James Kennelly et al. v. Myron and Selina Siegel Family Limited Partnership LP.**
**Mot. Seq. No. 1**

Page 10 of 10